UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MEGHAN LOKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-02475-MTS |
| | ) | |
| ST. LOUIS COUNTY, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Jon Belmar's Motion to Dismiss, Doc. [24]. The Motion is fully briefed and ready for adjudication. For the reasons explained herein, the Court will grant the Motion.

## I.    Background

Plaintiff brought suit against St. Louis County, Missouri and its former Police Chief, Colonel Jon Belmar, in his official and individual capacities, related to her employment and termination as a police officer with the County. Against the County alone she alleges two counts: a count of gender discrimination and a count of retaliation, both in violation of Title VII and the Missouri Human Rights Act. *See* 42 U.S.C. § 2000(e); Mo. Rev. Stat. § 213.010. Against the County and Belmar, she purports to bring a claim under 42 U.S.C. § 1983 for a denial of "her rights secured by Title VII of the Civil Rights Act of 1964, as well as equal protection of the law as secured by the Fourteenth Amendment to the United States Constitution." Doc. [1] ¶ 43. Belmar has moved to dismiss the § 1983 Count against him, in both capacities, under Fed. R. Civ. P. 12(b)(6).[1]

---

[1] Colonel Belmar moved to have all three Counts alleged in the Complaint dismissed, but only Count III purports to be against him. Counts I and II are against only the County. *See* Docs. [1], [32] at 3.

**II.**        <u>**Factual Allegations**</u>

Plaintiff worked for the St. Louis County Police Department. She alleges she began training at the County's police academy in June 2016 but suffered from an injury that required her to be placed on "limited duty." Doc. [1] ¶ 8. As a result, she was unable to perform one of the physical tests required to complete her training and graduate. "Generally," Plaintiff alleges, "recruits unable to complete training are not permitted to graduate with their class." *Id.* For reasons she does not explain, Plaintiff's instructors recommended to Chief Belmar "that Plaintiff be authorized to graduate with the rest of her recruit class." *Id.* at ¶ 9. Chief Belmar approved the recommendation. Plaintiff then was removed from "limited duty," graduated with her class on December 13, 2016, and was returned to "limited duty" the following day. *Id.* at ¶¶ 9, 10.

She began her assignment at the County police station in Jennings, Missouri, but, due to her "limited duty" status, she was unable to begin her one-year "probationary officer" period. *Id.* at ¶ 11. Though nominally on limited duty, Plaintiff alleges she "was performing all duties required of a probationary police officer as if under no physical restrictions or limitations." *Id.* at ¶ 12. Nevertheless, "she was not classified as a probationary officer and her one-year probationary period did not begin until March 2017." *Id.* Thus, instead of her probationary period ending in December 2017 "as it should have," it "was extended until March 20, 2018." *Id.* at ¶ 13.

In January 2018, Plaintiff "learned" of an investigation into allegations of misconduct by academy instructors and was interviewed. *Id.* at ¶ 15. She also "learned" that a lieutenant made "disparaging comments" about her, including that she "slept her way through the academy." *Id.* at ¶ 16. In response, Plaintiff filed a formal complaint with the Bureau of Professional Standards. On March 2, 2018, still within her probationary period, Plaintiff "was called into the station and met by three supervisors" and "was terminated." *Id.* at ¶ 19. Plaintiff alleges that male probationary

- 2 -

officers "who engaged in similar or more serious alleged conduct[2] in violation of Department policy were not fired like Plaintiff" and that "male probationary officers did not have their probationary status extended like Plaintiff when they were able to perform the duties Plaintiff was able to perform." *Id.* at ¶¶ 20, 14.

## III.     <u>Standard</u>

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." If the plaintiff fails to do so, Rule 12(b)(6) allows a party to move to dismiss a purported claim if it "fail[s] to state a claim upon which relief can be granted." To determine "whether [a plaintiff] states a § 1983 claim for gender discrimination," the count at issue here, the Court applies "'the ordinary rules for assessing the sufficiency of a complaint[.]'" *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). The factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). If a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

---

[2] Plaintiff does not state what her alleged conduct was nor in what "similar" or "more serious" conduct male probationary officers engaged.

The Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package System, Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in favor of the nonmoving party, *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78. Indeed, "[c]ourts should dismiss complaints based on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Hager*, 735 F.3d at 1013 (citing *Twombly*, 550 U.S. at 555).

## IV.     Discussion

The Eighth Circuit has held that "intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983." *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 756 (8th Cir. 2003). An official, however, "'is only liable for his . . . own misconduct' and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability." *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). As such, a supervisor may be held individually liable under § 1983 only if he either "directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007); *accord Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994).

Plaintiff alleges nothing about Belmar's supervision or his failure to train subordinates who caused the violations, so the Court will infer that the Complaint seeks to plead a claim under the theory that Belmar directly participated in the alleged constitutional violations. But even giving

Plaintiff all favorable inferences, she has not provided facts to state a claim to relief that is plausible on its face or that would "nudge[ ]" her claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Complaint does not state what Belmar did or failed to do or what part, if any, he played in Plaintiff's adverse employment actions. It fails to allege facts that show how Belmar had "direct responsibility for" the deprivation of Plaintiff's rights, *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990), or how he "directly participate[d]" in the wrongful conduct, *Brockinton*, 503 F.3d at 673, or what his "own misconduct" was, *Whitson*, 602 F.3d at 928.

In fact, the Complaint hardly discusses Belmar at all. Discounting the case caption, the Complaint mentions Belmar seven times. Four of those times are innocuous: two simply list him as a party and describe him as the police chief, Doc. [1] ¶ 7, and two others note he "approved" Plaintiff to graduate[3] with her class, *id.* at ¶ 9. The three remaining references to Belmar allege no specifics. One states that "[t]he actions complained of herein were taken by Defendant Belmar as part of a deliberate policy of discrimination against a female employee of the Department." *Id.* at ¶ 44. The Complaint does not say what actions Belmar took.[4] The second reference states that "Defendant Belmar has final policy making authority within the Department." *Id.* at ¶ 45. And the last again mentions no specifics whatsoever, stating "[t]he conduct of Defendant Belmar as set

---

[3] "Generally," those in her situation are not "permitted" to graduate. Doc. [1] ¶ 8. For reasons that she does not say, and perhaps does not know, Belmar, on the recommendation of academy instructors, "approved" Plaintiff for graduation. *Id.* at ¶ 9. Plaintiff does not describe this exception to allow her to graduate as an adverse employment action or even as a disadvantageous event. *See, e.g., id.* at ¶¶ 5, 26, 35.

[4] For instance, it does not say what role, if any, Belmar played in Plaintiff's termination, which Plaintiff alleges was one of the "adverse employment actions" against her. *See* Doc. [1] ¶ 5. She alleges that "three supervisors" were the ones that "met" her when "she was called into the station" the day she was terminated. *Id.* at ¶ 19. She does not say whether one of the three was Belmar, whether she saw Belmar that day, whether one of the supervisors mentioned Belmar, whether Belmar ordered her termination, or anything regarding Belmar pertaining to her termination.

forth herein was wanton, willful, and showed a reckless indifference to Lokey's constitutional and statutory rights as set forth above . . . ." *Id.* at ¶ 49.

In *Iqbal*, the Court found that the complaint's allegations (1) that government officials "'knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion,'" (2) that the attorney general "was the 'principal architect' of th[e] invidious policy," and (3) that the FBI Director "was 'instrumental' in adopting and executing it," were "conclusory," "bare assertions" that "amount[ed] to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim" and "not entitled to be assumed true." *Iqbal*, 556 U.S. at 680–81. Yet those statements still go further than Plaintiff's against Belmar. As such, the Court will dismiss Belmar in his individual capacity from Count III.

In addition, the Court will dismiss Belmar in his official capacity from Count III as it is redundant of Plaintiff's claims against St. Louis County. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (proper to dismiss claim against city officer in his official capacity as redundant of claim against city itself); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city . . . ."); *see also Johnson v. City of Leadington*, No. 4:19-cv-02282 SEP, 2020 WL 6117944, at *3 (E.D. Mo. Oct. 16, 2020) (noting redundancy and dismissing § 1983 claims against individual defendants in their official capacities).

V.     <u>**Conclusion**</u>

Accordingly,

- 6 -

**IT IS HEREBY ORDERED** that Defendant Jon Belmar's Motion to Dismiss, Doc. [24], is **GRANTED in part**. Belmar, in both his official and individual capacities, is **DISMISSED** from Count III.

**IT IS FURTHER ORDERED** that Plaintiff is given fourteen (14) days to file an Amended Complaint, if Plaintiff so chooses, that states a claim against Jon Belmar in his individual capacity. Dated this 6th day of November, 2020.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE